

AUSA Jonathan Goulding 313-226-0289
Special Agent Tyler Shoudy 313-226-2163

AO 91 (Rev. 08/09) Criminal Complaint



# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.
Krista Taha
Ali Taha

Case: 2:11-mj-30523
Judge: Unassigned,
Filed: 09-26-2011 At 12:09 PM
RE: SEALED MATTER (EOB)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __beginning on or about 02/12/02 - present__ in the county of _____Wayne_____ in the _____Eastern_____ District of _____Michigan_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 United Sates Code, Section 371 | Conspiracy to defraud the United States. |
| Title 18 United States Code, Section 1001(a)(2) | Material false statements in matters within the jurisdiction of the executive branch of the United States. |

This criminal complaint is based on these facts:

1. Beginning on or about February 12, 2002, and continuing to the present day, conspiring to defraud the United States, specifically the Immigration and Naturalization Service and U.S. Citizenship and Immigration Services, in violation of Title 18 United States Code, Section 371.

2. On December 6, 2007, made material false statemetns in matters within the jurisdiction of the executive branch of the United States, specifically, the Department of Homeland Security, United States Citizenship and Immigration Services, and the Office of Inspector General.

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Tyler Shoudy, Special Agent, DHS, Office of Inspector General
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __September 26, 2011__

_____
*Judge's signature*
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

City and state: _____Detroit, Michigan_____

_____
*Printed name and title*

I, Tyler C. Shoudy, being duly sworn, state:

1. I have been employed as a Special Agent for approximately twenty-four years. Since June of 2005, I have been employed with the Department of Homeland Security (DHS), Office of Inspector General (OIG) at Detroit, Michigan. The DHS OIG is the lead Internal Affairs (IA) component of the DHS, having supervisory authority over all other IA components. The duties of the DHS OIG include investigating fraud, waste, and abuse within the DHS, with an emphasis on public corruption. The DHS OIG also has the duty of investigating any violation that may affect the programs and operations of the DHS. During my tenure with the OIG, I have investigated, almost exclusively, immigration benefit fraud violations related to public corruption by DHS employees and I am currently assigned to the Document and Benefit Fraud Task Force. Prior to being employed by the DHS OIG, I was employed by the DHS, Immigration and Customs Enforcement (ICE), Detroit, Michigan for approximately two years. My duties with ICE included investigating criminal and/or administrative violations related to the Immigration and Nationality Act and the United States Customs laws and regulations. Prior to that, I was employed by the Department of Justice, Immigration and Naturalization Service (INS), Detroit, Michigan for over sixteen years. My duties with INS included investigating criminal and administrative violations related to the Immigration and Nationality Act. During my tenure with ICE and INS, I have investigated, almost exclusively, immigration benefit fraud violations, including marriage fraud, visa fraud, and naturalization fraud.

2. Based upon the investigation, as set forth below, I believe that from on or about February 12, 2002 and continuing until the present, in the Eastern District of Michigan, Southern Division, Krista Taha, Ali Taha, and others, knowingly and willfully conspired and agreed together and with each other, to defraud the United States of and concerning its governmental functions and rights, specifically the functions and rights of the INS and U.S. Citizenship and Immigration Services (CIS).

3. As set forth below, it was part of the conspiracy that Krista Taha and others would by deceit, craft, trickery, and dishonest means, defraud the United States by interfering with and obstructing the lawful governmental functions of the INS and CIS, in that they would seek to have immigration benefits, including lawful permanent resident status, employment authorization, and naturalization granted to Ali Taha on the basis of false information and for which he was not eligible. It was further a part of the conspiracy that Krista Taha and Ali Taha would enter into a fraudulent marriage, solely for the purpose of procuring immigration benefits for Ali Taha, that Krista Taha and Ali Taha would provide false information and documentation to the United States concerning that marriage, including but not

limited to concealing Krista Taha's true residences from the United States, and that Krista Taha and Ali Taha would lie to the United States if and when questioned on the topic.

4. My investigation included reviewing the DHS Alien Registration File (the "A-file") for Ali Taha, which contains immigration related documentation, including petitions filed by Krista Taha and Ali Taha, other relevant records, and discussing and collaborating with other criminal investigators. The facts set forth in this affidavit are offered to establish probable cause and are not necessarily a complete accounting of the investigation. My investigation revealed the following facts:

   a. On or about January 4, 2001, Ali Taha, a native of Lebanon, entered into the United States as a nonimmigrant visitor for pleasure and was authorized to remain in the United States until December 25, 2001.

   b. On or about February 12, 2002, Ali Taha and United States citizen Krista Taha (nee: Jones) were married in Wayne County, Michigan.

   c. On or about March 06, 2002, Krista Taha, under the penalty of perjury, signed a Petition for Alien Relative (form I-130), stating she was a United States citizen who was married to foreign national Ali Taha. The I-130 listed 4331 Calhoun Street, Dearborn, Michigan as the address for both Krista Taha and Ali Taha. The filing of this form is the first and a necessary step in obtaining lawful permanent resident status for the spouse of a United States citizen. Lawful permanent resident status allows an alien –someone who is not a citizen or national of the United States– to permanently live and work in the United States.

   d. On or about March 06, 2002, Ali Taha, under the penalty of perjury, signed an Application to Register Permanent Residence or Adjust Status (form I-485). By filing this form, Ali Taha sought to become a lawful permanent resident of the United States. The basis for filing this form was Ali Taha's marriage to United States citizen Krista Taha and her subsequently filed I-130. The I-485 listed 4331 Calhoun Street, Dearborn, Michigan as his address.

   e. The I-130, the I-485, and supporting documentation were then submitted by Krista Taha and Ali Taha to the INS on or about April 12, 2002.

   f. On or about November 17, 2002, Krista Taha was hired by the Transportation and Security Administration as a Transportation Security Officer and assigned to Detroit Metropolitan/Wayne County Airport, Romulus, Michigan. She remains employed by the TSA at that location to-date.

g. In March of 2003, the Department of Homeland Security, Citizenship and Immigration Services (CIS) came into existence and assumed jurisdiction over petitions pertaining to alien registry and citizenship that were filed under the Immigration and Nationality Act, including those filed by Krista Taha and Ali Taha.

h. On or about August 8, 2003 and November 25, 2003, Ali Taha and Krista Taha were interviewed, under oath, at the CIS office in Detroit, Michigan. They attested that they were in a bona fide marital relationship. Based upon their statements during both interviews, CIS approved both the I-130 and I-485 and Ali Taha was lawfully admitted for permanent residence on a two-year conditional basis on November 25, 2003.

i. On or about September 10, 2005, Ali Taha and Krista Taha, under penalty of perjury, both signed a joint Petition to Remove Conditions on Residence (I-751). Part 2, Basis for Petition, Part A states: *My conditional residence is based upon my marriage to a U.S. Citizen or permanent resident, and we are filing this petition together.* Both list their address as 4331 Calhoun Street, Dearborn, Michigan. The I-751 was submitted to CIS on September 12, 2005 along with supporting documentation. Based upon their attestations and the supporting documentation, both of which were material to a decision on whether to grant the petition, the petition was approved by CIS on October 18, 2005, and Ali Taha became a lawful permanent resident of the United States, unconditionally.

j. The supporting documentation filed with the I-751 consisted of two documents later established to be fraudulent, as outlined below. One was a letter authored by Moussa Bazzi, falsely attesting to his and his wife's relationship with Ali Taha and Krista Taha. The other was a lease executed by Ali Taha and Krista Taha falsely giving the impression they were living together.

k. On or about August 25, 2006, Ali Taha, under the penalty of perjury, signed an Application for Naturalization (N-400), seeking to become a United States citizen. In part 2, Information About Your Eligibility, part B is marked and states: *I have been a Lawful Permanent Resident of the United States for the last 3 years, and I have been married to and living with the same U.S. Citizen for the last 3 years, and my spouse has been a U.S. citizen for the last 3 years.* Ali Taha listed his and Krista Taha's address as 4331 Calhoun Street, Dearborn, Michigan. In fact, as outlined below, the Krista Taha was not living with Ali Taha at the time Ali Taha signed and filed his application. The application remains

pending to-date and the benefit (naturalization) is therefore still being sought by Ali Taha as of the date of this affidavit.

l. On January 4, 2008, Torra Abram was interviewed. Abram stated she met Krista Taha in December of 1999, while working with her at Lutheran Family and Child Social Services. Abram stated after Krista's marriage to Ali Taha, Krista told her she was helping Ali Taha out and that he was applying for permanent residence in the United States. Abram also stated that Krista Taha was dating her brother, Leanders Kate at the time she married Ali Taha, and that they continued to date after the marriage.

m. On May 2, 2008, Leanders Kate was interviewed. Kate stated he began intimately dating Krista Taha in 2000 or 2001. Kate stated he continued to date her until their relationship ended some time in 2002 or 2003. Kate remembered specifically going on a date with Krista Taha for his birthday in October of 2002, which was after her marriage to Ali Taha on February 12, 2002.

n. On August 11, 2008 and July 20, 2011, Richard Chenault was interviewed. Chenault stated while employed by the TSA as a Transportation Security Officer, he met Krista Taha. Chenault stated that in September of 2003, Krista Taha told him she moved to live with her mother (at 4142 St. Antoine Street, Detroit, Michigan).

o. Richard Chenault stated he and Krista Taha became intimate in January of 2004 and Krista Taha moved in with Chenault at 9958 Longacre Street, Detroit, Michigan in February of 2004. Chenault stated he and Krista Taha lived together, without interruption, from February of 2004 until April of 2005.

p. Richard Chenault stated while Krista Taha was living with him and in his presence, Krista received a telephone call from Ali Taha. Chenault stated Krista Taha told him that Ali Taha wanted to become a United States Citizen and asked Krista to supply him with photographs of her and him together.

q. On August 18, 2008, Joan Chenault was interviewed. Chenault stated her son Richard Chenault and Krista Taha began living together in late 2003 or early 2004 and did so until approximately March of 2005.

r. On December 6, 2007 and on July 20, 2011, Garry Napier was interviewed. Napier stated while employed by the TSA as a Transportation Security Officer, he met Krista Taha in late 2006. Napier stated they began dating in

December of 2006, Krista Taha became pregnant by him in January of 2007, and they lived together from July of 2007 until October of 2007.

s. Napier stated Krista Taha told him that prior to her and Ali Taha's immigration interview, Krista Taha was not living with Ali Taha. Napier stated Krista Taha told him Ali Taha had asked her to 'play along' regarding the permanent residence interview. Napier stated Krista Taha told him she and Ali Taha had lied to CIS at the interviews.

t. On December 06, 2007, July 13, 2011, and July 20, 2011, Moussa Bazzi was interviewed. Bazzi stated Ali Taha brought him a draft handwritten letter, dated August 10, 2005, attesting that Bazzi and his wife knew Ali and Krista Taha well and had been present with them on all holidays and social activities, as well as all family gatherings and that he asked Bazzi to write a letter with that language for him. Bazzi stated he typed the letter as requested, and signed it. Bazzi stated in fact he and his wife did not know Ali and Krista Taha well and had not seen Ali and Krista Taha on all holidays, social gatherings, and family gatherings notwithstanding the contents of the letter. Bazzi stated he then gave the letter to Ali Taha.

u. Bazzi also stated he notarized a three year lease agreement between landlord Kamal El-Hawli and tenants Ali Taha and Krista Taha on March 1, 2004 related to the property at 4331 Calhoun Street, Dearborn, Michigan. The term of the lease was from March 1, 2004 to February 27, 2007. Bazzi stated he notarized the signatures after all three parties had signed the lease in his presence. In fact, as previously noted, Krista Taha was living with Richard Chenault, beginning in February of 2004.

v. Michigan Department of State records indicate that, on a driver's license application dated April 24, 2006, Krista Taha listed her address as 4331 Calhoun Street, Dearborn, Michigan.

w. On December 6, 2007 and on July 20, 2011, the mother of Krista Taha, Kathy Gordon, was interviewed. Gordon stated in approximately March of 2005 Krista Taha moved in with her at 4142 St. Antoine, Detroit, Michigan. Bank records from the joint checking account of Ali and Krista Taha indicate that Krista Taha began writing rent and utilities checks for 4142 St. Antoine Street, Detroit, Michigan in June of 2005 and continued to do so until July of 2007.

x. On December 6, 2007, in a sworn affidavit, Ali Taha stated that he did not marry Krista Taha in order to obtain lawful permanent residence in the United States. Ali Taha stated he and Krista Taha lived in marital union at

4331 Calhoun, Dearborn, Michigan from February of 2002 through November of 2006.

y. On December 6, 2007, Krista Taha was interviewed and denied marrying Ali Taha in order for Ali Taha to obtain permanent residence in the United States.

z. August 24, 2011, Krista Taha was interviewed a second time. Krista Taha was shown the I-751 contained in Ali Taha's alien file. Krista Taha confirmed that the signature on the I-751 was hers. Krista Taha was shown the above mentioned lease agreement contained in Ali Taha's alien file that was submitted in conjunction with the I-751. Krista Taha confirmed that the signature on the lease was hers.

5. Based upon the foregoing, I believe at least the following overt acts have been committed in furtherance of the conspiracy to defraud the United States:

a. On February 12, 2002, Krista Jones and Ali Taha were married in Wayne County, Michigan solely for the purpose of obtaining immigration benefits for Ali Taha.

b. On November 25, 2003, Ali Taha and Krista Taha, under oath, falsely stated to an officer of the Citizenship and Immigration Services (CIS) that they were living in a bona fide marital relationship at 4331 Calhoun Street, Dearborn, Michigan.

c. On or about September 12, 2005, Ali Taha and Krista Taha signed and submitted, under penalty of perjury, a joint Petition to Remove Conditions on Residence (I-751) that falsely listed Krista Taha's address as 4331 Calhoun Street, Dearborn, Michigan, and which was submitted to the CIS, along with the fraudulent lease and the fraudulent support letter by Moussa Bazzi.

d. On April 24, 2006, Krista Taha completed a State of Michigan, Secretary of State Driver's License Application and falsely listed her address as 4331 Calhoun Street, Dearborn, Michigan.

e. On August 29, 2006, Ali Taha submitted an Application for Naturalization (N-400) to the CIS that falsely stated he and Krista Taha had been living at 4331 Calhoun Street, Dearborn, Michigan for the last three years.

f. On December 6, 2007, Krista Taha falsely denied assisting Ali Taha with fraudulently obtaining immigration benefits.

g. On December 6, 2007, in a sworn statement, Ali Taha falsely stated he and Krista Taha were living together in a marital relationship at 4331 Calhoun Street, Dearborn, Michigan until November of 2006.

6. The affiant states that there is therefore probable cause to believe that from on or about February 12, 2002 and continuing on until the present, in the Eastern District of Michigan, Southern Division, Krista Taha and Ali Taha and others did knowingly and willfully conspire and agree with each other, to defraud the United States of and concerning the governmental functions and rights of the Immigration and Naturalization Service and the United States Citizenship and Immigration Services; in violation of Title 18, United States Code, Section 371 and that Krista Taha and Ali Taha did knowingly and willfully make material false statements in a matter within the jurisdiction of the executive branch of the United States in violation of Title 18, United States Code, Section 1001(a)(2).

_____
Tyler C. Shoudy, Special Agent

Sworn and Subscribed
before me this 26th
day of September, 2011

_____
Honorable
United States Magistrate Judge